IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAWANTAYE BOSWELL,

        Petitioner,

v.                           Civil Action No. 5:14CV131
                           (Criminal Action No. 5:11CR32)
UNITED STATES OF AMERICA,         (STAMP)

        Respondent.


## MEMORANDUM OPINION AND ORDER ADOPTING AND AFFIRMING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PETITIONER'S § 2255 MOTION AND OVERRULING PETITIONER'S OBJECTIONS

The petitioner, Dawantaye Boswell ("Boswell"), filed this pro se[1] motion under 28 U.S.C. § 2255 challenging the validity of his conviction and sentence. This matter was referred to United States Magistrate Judge Robert W. Trumble under Local Rule of Civil Procedure 72.01. The magistrate judge held an evidentiary hearing on one of the grounds stated in Boswell's motion. Counsel was appointed to represent Boswell at the evidentiary hearing. Boswell also filed a motion for leave to amend his petition to assert a new claim. The magistrate judge entered a report recommending that Boswell's § 2255 motion and his motion for leave to amend be denied. Boswell's counsel filed objections to the report and recommendation as to the portions of the petition on which she had

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1416 (10th ed. 2014).

authority to represent Boswell. Boswell then filed <u>pro se</u> objections as to the remainder of the report and recommendation.[2] For the following reasons, this Court adopts and affirms the report and recommendation, denies the motion for leave to amend, denies the § 2255 motion, and overrules Boswell's objections.

## I. <u>Background</u>

After a jury trial, Boswell was convicted of possession with intent to distribute more than 280 grams of cocaine base within 1,000 feet of a protected location in violation of 21 U.S.C. §§ 860 and 841(a)(1) and (b)(1)(A), and establishment of manufacturing operations in violation of 21 U.S.C. § 856(a)(2). This Court sentenced Boswell to a total of 235 months of imprisonment to be followed by a total of six years of supervised release. This Court imposed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on this Court's finding that Boswell committed perjury at trial. Subsequently, this Court reduced Boswell's sentence of imprisonment to 188 months under Amendment

---

[2]Boswell filed his <u>pro se</u> objections seventeen days after the report and recommendation was entered. However, Boswell's counsel filed a motion on August 2, 2016 requesting clarification as to her authority to file objections to the report and recommendation and requesting an extension of time for Boswell to file any <u>pro se</u> objections. ECF No. 231. Because counsel and Boswell each filed objections regarding different portions of the report and recommendation, the request for clarification is denied as moot. The request for an extension of time for Boswell to file <u>pro se</u> objections is granted. Accordingly, the motion for clarification and an extension (ECF No. 231) is GRANTED IN PART and DENIED IN PART AS MOOT.

782 to the United States Sentencing Guidelines. Boswell appealed his conviction and sentence, and the United States Court of Appeals for the Fourth Circuit affirmed. Boswell filed a petition with the United States Supreme Court for a writ of certiorari, but was denied.

Boswell then filed this motion to vacate his sentence under 28 U.S.C. § 2255. He cites four grounds in his motion: (1) that the government delayed his arraignment and appointment of counsel, preventing him from collecting defense evidence; (2) ineffective assistance of counsel for failure to seek a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978); (3) ineffective assistance of counsel for failure to "look into" the process for selection of the jury venire; and (4) ineffective assistance of counsel for failure to present a plea offer to Boswell on the first day of trial. Boswell also filed a motion for leave to amend his § 2255 motion to include a new claim of ineffective assistance of counsel for failing to properly advise Boswell that providing perjured testimony at trial could result in a sentencing enhancement for obstruction of justice. The government opposes this motion. The motion was fully briefed and argued before the magistrate judge.

The magistrate judge scheduled an evidentiary hearing as to Ground 4 to determine whether Boswell's trial counsel conveyed a plea offer to him on the first day of trial. The magistrate judge also appointed counsel to represent Boswell in the evidentiary

hearing as to Ground 4 and as to Boswell's motion for leave to amend his petition. After the evidentiary hearing, the magistrate judge entered a report recommending that Boswell's § 2255 motion and his motion for leave to amend be denied. Boswell's counsel filed objections to the report and recommendation as to Ground 4 and as to the denial of the motion for leave to amend. Boswell also filed pro se objections as to the remainder of the report and recommendation.

## II.   Applicable Law

Because Boswell's counsel had limited authority in these proceedings, this Court will consider both counsel's objections and Boswell's pro se objections. Accordingly, the magistrate judge's recommendation will be reviewed de novo as to those findings to which objections were made. 28 U.S.C. § 636(b)(1)(C).

## III.   Discussion

### A.   Section 2255 Motion

#### 1.   Pre-Indictment Delay Claim

Boswell alleges that the government conspired to delay his arraignment and appointment of counsel to impede his ability to investigate the case and conduct necessary discovery. Boswell argues that he was therefore unable to obtain evidence showing that he was not the person producing crack cocaine in his apartment.

A two-pronged inquiry is required when a petitioner alleges that pre-indictment delay resulted in a violation of due process.

4

United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403 (4th Cir. 1985). "First, a court must assess whether the [petitioner] has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant." Id. "If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay." Id. at 403-04. The core question is "whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" Id. at 404 (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)) (emphasis added). Further, if delay results from the government's good faith effort to initiate criminal proceedings, "the Supreme Court has held that [such conduct] ' . . . does not deprive [the defendant] of due process, even if his defense might have been somewhat prejudiced by the lapse of time.'" United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009) (quoting Lovasco, 431 U.S. at 796).

First, Boswell claims he was prejudiced by the delay because it "prevented [him] from securing evidence that would have shown he had been absent from his apartment on July 7, through the overnight period of July 8, 2011, and that Jerome Ross ("Ross") had full access to the apartment and was seen in the immediate vicinity of the apartment that night." ECF No. 167-3 at 3. Specifically,

5

Boswell alleges that he was unable to obtain video surveillance recordings from a bar showing that he was not at his apartment those nights. He also alleges that he was unable to locate a witness who claimed to have seen Ross banging on Boswell's apartment door on July 7, 2011. Boswell argues that he was unable to obtain this evidence because of the pre-indictment delay, and that this evidence would have created reasonable doubt as to his guilt.

However, Boswell fails to demonstrate that this evidence would have been recovered had he been appointed counsel earlier. Further, Boswell fails to show that there is a reasonable probability that the result of the trial would have been different if this evidence had been obtained and presented at trial. While he argues that this evidence would have supported his testimony that Ross was responsible for the drugs in his apartment, that would not necessarily have lead to a different result. Substantial evidence supported the jury's finding that Boswell produced with intent to distribute crack cocaine, and the jury rejected Boswell's defense that Ross was the actual culprit.

Second, even if Boswell were prejudiced by the delay, the government had good cause for such delay and acted in good faith. Boswell was arrested by West Virginia law enforcement officials on July 8, 2011 for suspected robbery. State law enforcement officers executed a warrant to search Boswell's apartment for firearms and

ammunition in relation to the robbery, finding crack cocaine and paraphernalia in plain view. Based on that finding, federal law enforcement officials executed a separate warrant to search the apartment for drugs that same day, finding the same crack cocaine and paraphernalia. The government then filed a criminal complaint naming Boswell for the offenses of conviction. The government asserts that it then presented the case to the next available federal grand jury. On August 1, 2011, the federal grand jury returned the indictment. Counsel was appointed for Boswell on August 4, 2011, and Boswell was arraigned on August 10, 2011. This Court finds that the government obtained an indictment as soon as was possible and acted in good faith at all times. Any resulting prejudice caused to Boswell was slight and far outweighed by the government's good faith actions in initiating criminal proceedings.

2. <u>Ineffective Assistance of Counsel Claims</u>

"[A] movant seeing collateral relief from his conviction or sentence through an ineffective assistance claim must show (1) that his counsel's performance was deficient[,] and (2) that the deficiency prejudiced his defense." <u>United States v. Basham</u>, 789 F.3d 358, 371 (4th Cir. 2015) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Counsel's performance was deficient if "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. There is a "strong presumption that

7

counsel's representation was within the wide range of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). "The Strickland standard is difficult to satisfy, in that the 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" Basham, 789 F.3d at 371 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)). To show prejudice, "[t]he movant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

a. Failure to Seek a Franks Hearing

Boswell argues that his counsel was ineffective in failing to seek a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to challenge the validity of the warrant to search his apartment for drugs. Specifically, Boswell argues that his counsel should have sought a Franks hearing because the application and supporting affidavit omitted facts regarding the alleged invalidity of the prior warrant to search the apartment for firearms and ammunition and allegedly inconsistent statements Ross gave to police regarding the robbery investigation.

Boswell fails to show that his trial counsel was ineffective in not seeking a Franks hearing, because Boswell fails to show that

8

he would have been entitled to a <u>Franks</u> hearing.  Upon request, a court must hold a hearing to determine the validity of a warrant if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56 (1978).  "To satisfy the <u>Franks</u>' intentional or reckless falsity requirement for an omission, the defendant must show that facts were omitted . . . [making] the affidavit misleading," and that the omission was designed to mislead or was made in reckless disregard of whether it would mislead. <u>United States v. Tate</u>, 524 F.3d 449, 455 (4th Cir. 2008) (emphasis omitted).  However, "an affidavit offered to procure a search warrant cannot be expected to include . . . every piece of information gathered in the course of an investigation." <u>Id.</u> (internal quotation marks omitted).

While Boswell identifies facts he claims were omitted from the affidavit, he fails to show that their omission made the affidavit misleading or that their inclusion would deprive the warrant of probable cause.  Had the affidavit included the facts Boswell alleges were omitted, the probable cause supporting the second warrant would not have been diminished or have even become questionable.  Further, to the extent that Boswell argues the first warrant was invalid, making the second warrant invalid as a fruit

of the first, the Fourth Circuit held on direct appeal that the evidence seized under the second warrant was not subject to exclusion even if the first warrant were invalid. ECF No. 160 at 3-7. Thus, Boswell's trial counsel's performance did not fall below reasonable professional standards because a request for a <u>Franks</u> hearing would have been futile. Similarly, because Boswell was not entitled to a <u>Franks</u> hearing, he is unable to show that he was prejudiced by his counsel's failure to request a <u>Franks</u> hearing.

   b. <u>Failure to Object to the Jury Selection Process</u>

  Second, Boswell argues that his counsel was ineffective in failing to "inquire" into the jury selection process. He argues that African-Americans and Asian-Americans constitute 1.79% and "less than 1%" respectively of the Northern District of West Virginia's population. ECF No. 167-3 at 6. Boswell argues that the jury pool did not include any African-Americans or Asian-Americans despite significant numbers of such persons in the population, resulting in a violation of Boswell's Sixth Amendment right to a jury venire that is a fair cross-section of the community. He argues that a reasonable attorney in that situation would have challenged the jury selection process to "establish a record" regarding whether any racial group was systematically excluded from the jury pool. <u>Id.</u> at 7.

A defendant's Sixth Amendment right to a petit jury selected from a fair cross-section of the community is violated where: (1) "a 'distinctive' group in the community" was excluded from the jury venire; (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community"; and (3) "that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). Boswell fails to demonstrate why his attorney should have objected to the racial composition of the jury venire other than his assertion that "[t]he demographic profile of the [District] would cause one to expect African-American and/or Asian[-American] membership on any venire drawn from a fair cross-section of the . . . population." ECF No. 167-3 at 7. However, Boswell does not allege that African-American or Asian-American persons were systematically excluded in the jury-selection process, or that his counsel had reason to believe that such persons were systematically excluded. Further, for the same reasons, Boswell fails to demonstrate that he was prejudiced by his counsel's inaction. Thus, Boswell fails to demonstrate that his Sixth Amendment rights were violated as a result of his counsel's failure to object.

c.  Failure to Convey a Plea Offer

Boswell argues that his counsel was ineffective in rejecting a plea offer allegedly made on the first day of trial before

11

communicating the alleged offer to Boswell. To prove ineffective assistance of counsel regarding a plea offer, a petitioner must show that defense counsel failed to convey a <u>formal</u> plea offer to the petitioner, and that the petitioner was prejudiced by that failure. <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1408 (2012) (holding that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). "To show prejudice from ineffective assistance of counsel in a case involving a plea offer, [the] petitioner[] must demonstrate a reasonable probability that (1) they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, and (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 366 (4th Cir. 2013) (internal quotation marks omitted).

After reviewing the record, including the evidentiary hearing transcript, this Court finds that the government did not make a formal plea offer on the first day of trial. The prosecuting Assistant United States Attorney John C. Parr ("Parr"), and defense counsel, Douglas Sughrue ("Sughrue"), both testified that plea negotiations resulted in a formal plea offer in the form of a proposed plea agreement, which seemingly satisfied all of Boswell's concerns. ECF No. 235 at 3-40-42, 121, 150-51. Sughrue conveyed

the offer to Boswell a week before trial, but Boswell refused to sign the agreement. ECF No. 235 at 121, 150-51. The matter then proceeded to trial. Parr testified that he "felt confident in this case," and that after this Court denied Boswell's pretrial motions, he "knew there was going to be a conviction." ECF No. 235 at 24. Parr then asked Sughrue if Boswell "changed his mind now, has he seen the light, and that was it. It was as much a[n] I-told-you-so remark." Id. This comment did not contain any terms essential to a plea agreement, or any terms that could be considered favorable to Boswell.

Boswell argues that Parr's comment constituted a plea offer because it was in reference to the terms set out in the prior formal proposed plea agreement. However, Boswell rejected those terms when he refused to accept the prior proposed plea agreement. Parr's comment did not restate the terms of the prior offer or otherwise propose any terms that would be beneficial to Boswell. Further, Parr testified that if Sughrue indicated Boswell's willingness to plead guilty, the terms of any formal proposed plea agreement would have been different than those contained in the prior proposed plea agreement. Id. Thus, this Court finds that Parr did not make a formal plea offer on the first day of trial.

Additionally, Boswell testified that after the first day of trial Sughrue told him that Parr suggested to Sughrue that Boswell should plead guilty to the indictment, ECF No. 235 at 168-69.

However, Boswell's testimony was contradicted by that of Parr and Sughrue. They both testified that Parr did not suggest Boswell should plead to the indictment and that his comment was not a formal plea offer. _Id._ at 115-16, 121-22. Further, Sughrue testified that had Parr even suggested a plea to the indictment, Sughrue would have immediately communicated that suggestion to Boswell. _Id._ Based on all of the testimony given, this Court finds that Parr did not suggest to Sughrue that Boswell should plead guilty to the indictment. Further, even if Parr suggested that Boswell should plead guilty to the indictment, that suggestion does not constitute a formal plea offer that Sughrue was obligated to convey to Boswell. A formal plea offer is an offer "from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." _Frye_, 132 S. Ct. at 1408. Any suggestion by Parr that Boswell should have plead guilty to the indictment did not include any "conditions that may be favorable to the accused." Accordingly, even if Parr suggested a plea to the indictment, Sughrue was not obligated to communicate such a suggestion to Boswell.

Even if Parr's comment and alleged suggestion that Boswell plead guilty to the indictment constituted plea offers, they were at best only informal plea offers. Neither contained definite terms that would be beneficial to Boswell, and they both lacked sufficient definition for Boswell to show he would have accepted

those offers and that this Court would not have rejected them.  See Merzbacher, 706 F.3d at 369-70 (concluding that informal plea discussions that set out some definite terms lacked sufficient definition to conclude that the petitioner would have accepted it without the prosecution canceling the offer or the court refusing to accept it); Ramirez v. United States, 751 F.3d 604, 607-08 (8th Cir. 2014) (concluding that an informal plea offer "that expressly contained no promises or assurances" is not sufficient for a showing of prejudice).  Boswell argues that he would have accepted a plea offer at the time of Parr's comment and alleged suggestion because "circumstances had changed drastically since the last plea negotiations," as Boswell "had watched his jury be empaneled with no persons of color, he had just witnessed his pre-trial motions go down in flames, and was prepared for the trial court to rule against him on necessary witnesses."  ECF No. 236 at 5.  However, Parr's comment and alleged suggestion "contained no promises or assurances," and Boswell fails to even shown there was a reasonable probability that the government would have extended a plea offer if Boswell expressed his willingness to plead guilty.  Ramirez, 751 F.3d at 608.  Boswell "ha[d] no right to be offered a plea."  Frye, 132 S. Ct. at 1410.  Accordingly, Boswell fails to demonstrate that he was prejudiced by Sughrue's failure to communicate to him Parr's comment or suggestion.

B.  <u>Motion for Leave to Amend</u>

Boswell filed a motion for leave to amend his petition to add a new ineffective assistance of counsel claim. Specifically, Boswell seeks to allege that his counsel was ineffective in failing to advise him that a sentencing enhancement for obstruction of justice could be imposed if this Court found that he committed perjury at trial.[3] Boswell argues that he would not have testified at trial had he been advised of this possibility.

After a responsive pleading has been served, Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). "[L]eave to amend shall be given freely, absent bad faith undue prejudice to the opposing party, or futility of amendment. Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied."

---

[3]This Court rejects the assertion made at the evidentiary hearing that the imposition of the two-level enhancement for obstruction of justice is "an automatic thing that [the undersigned judge] does" when a defendant testifies at trial and is convicted. ECF No. 235 at 151. The Court considered the recommendation contained in the presentence report and did not impose the obstruction of justice enhancement merely because the petitioner exercised his constitutional right to testify but, rather because his testimony at trial and other evidence showed, by a preponderance of the evidence, that Boswell committed perjury by giving false testimony concerning a material matter given with a willful intent to deceive rather than as a result of either confusion or mistake or faulty memory. The Court made these specific findings, following the law under <u>United States v. Dunnigan</u>, 507 U.S. 87 (1993). ECF No. 158 at 12–13. While Boswell certainly had a right to testify, he did not have a constitutional right to commit perjury.

<u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).  However, Rule 15(c) provides for the relation back of amendments to the original pleading where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading."  Fed. R. Civ. P. 15(c)(2).  A habeas petitioner's new claims asserted in a proposed amendment relate back to the original petition only where they are related in "both time and type." <u>Pittman</u>, 209 F.3d at 318 (internal quotation marks omitted).

Boswell's new ineffective assistance of counsel claim does not relate back to his original petition.  He alleges that his counsel failed to properly advise him, before trial, of the potential obstruction of justice enhancement if he provided perjured testimony.  While this claim takes the same form as his original ineffective assistance of counsel claims, it presents a completely new set of allegedly deficient conduct by his counsel.  Boswell argues that the claim arises out of the same occurrence as his counsel's alleged failure to communicate a plea offer after the first day of trial.  He argues that he met with defense counsel after the first day of trial and that defense counsel failed to advise him that committing perjury could result in a sentencing enhancement.  However, defense counsel's obligation to convey a formal plea offer to Boswell and his duty to advise Boswell as to how the United States Sentencing Guidelines might be applied in his

case are completely separate duties, and the breach of one is unrelated to the other. Thus, Boswell's new claim is based on separate conduct by his trial counsel that allegedly violated a separate duty.

Boswell also argues that his Court should broadly apply Rule 15(c) here because Boswell did not understand the distinction between his new ineffective assistance claim and his prior direct appeal regarding this Court's imposition of the obstruction of justice enhancement.[4] However, "a broad view of 'relation back' would undermine the limitations period set by Congress in the [Antiterrorism and Effective Death Penalty Act]." Pittman, 209 F.3d at 318. This Court does not find a compelling reason to deviate from Congress's express intent in limiting claims under § 2255. Thus, this Court finds that Boswell's new claim does not relate back to his original petition.

Further, even if Boswell's new claim related back to his original petition, the amendment would be futile because he fails to state a claim for ineffective assistance of counsel. Boswell argues that defense counsel's failure to advise him of the potential obstruction of justice enhancement was per se incompetence resulting in a waiver of his Fifth Amendment right

---

[4]On direct appeal, the Fourth Circuit affirmed this Court's application of the obstruction of justice enhancement based on ths Court's finding that Boswell committed perjury at trial. ECF No. 160 at 6-7.

against self-incrimination because he lacked true knowledge of the consequences of doing so. Boswell argues he was prejudiced because the obstruction of justice enhancement was applied at sentencing. However, Boswell's counsel was not obligated to advise him to not commit perjury. Regardless of the potential application of the obstruction of justice enhancement, perjury is a criminal offense that Boswell could be separately tried and convicted. Boswell's decision to commit perjury was his own, and his culpability was not due to any failure of his counsel.

C.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 and Section 2255 cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. This memorandum opinion and order is a final order adverse to the petitioner in a case in which 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability to take an appeal.

This Court finds that it is inappropriate to issue a certificate of appealability in this matter. Specifically, this Court finds that Boswell fails to make a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any

dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). This Court concludes that reasonable jurists would not find this Court's ruling to be debatable. Accordingly, Boswell is DENIED a certificate of appealability by this district court. Boswell may, however, request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue a certificate of appealability.

## IV. Conclusion

For the reasons set forth above, the magistrate judge's report and recommendation (ECF No. 8/228) is AFFIRMED AND ADOPTED. Accordingly, Boswell's § 2255 motion (ECF No. 1/167) is DENIED, Boswell's motion for leave to amend his § 2255 motion (ECF No. 213) is DENIED, and Boswell's objections to the report and recommendation (ECF Nos. 236, 238) are OVERRULED. Further, Boswell's motion to expand the evidentiary hearing to include the amended claim (ECF No. 220) is DENIED AS MOOT and his motion for clarification and to enlarge time to file objections (ECF No. 231) is GRANTED IN PART and DENIED IN PART AS MOOT. It is ORDERED that this civil action be DISMISSED WITH PREJUDICE and STRICKEN from the active docket of this Court.

Should the petitioner choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he

must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of this order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   September 21, 2016


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE